593 A.2d 857

**J. KINDERMAN & SONS, INC., t/a Brite Star Manufacturing Company, Appellees,**

**v.**

**UNITED NATIONAL INSURANCE COMPANY and Lawrence Okoniewski, Jr., Administrator of the Estate of Christine Okoniewski, Deceased, and Lawrence A. Okoniewski, Jr., and Linda Okoniewski, as Individuals in Their Own Right, and Stanton Discount Pharmacy, Inc. and George Kellan, t/a Smyna Discount and/or Smyrna Discount Drugs and Nathan Schecter and Sons and J. Orman, Inc., and World Traders and Kiu Hung Industrial Co., Ltd. and the Wirkman Company and Republic Hogg Robinson of Pennsylvania, Inc.**

**Appeal of UNITED NATIONAL INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued April 2, 1991.

Filed June 7, 1991.

Reargument Denied Aug. 8, 1991.

**38**

Frederick T. Lachat, Philadelphia, for appellant.

Roger F. Cox, Philadelphia, for appellees.

Before WIEAND, OLSZEWSKI and BROSKY, JJ.

OLSZEWSKI, Judge:

This is an appeal from an order granting summary judgment in favor of J. Kinderman & Sons, Inc. (hereafter "Kinderman") and against United National Insurance Company (hereafter "United") entered on July 2, 1990. This case arises from litigation commenced following Christine Okoniewski's death, which was caused by a plastic toy which lodged in her throat.

The facts of this case are as follows. On November 20, 1982, Christine Okoniewski, an 11–month–old child, removed a plastic plug from a "waterball" Christmas product, imported and distributed by Kinderman, which lodged in her throat causing her death. The estate of Christine Okoniewski filed a products liability lawsuit against a number of parties, including Kinderman.

The insurance policies are the subject of this appeal. Kinderman purchased two insurance policies for coverage of product liability claims: Ambassador Insurance Company (hereafter "Ambassador"), Policy No. GLA 794507; and a commercial umbrella liability policy with United, Policy No.

CU–5016. (Trial court opinion at 1.) Kinderman's policy with Ambassador provided coverage of $1,000,000 for each occurrence/aggregate combined single limit. *Id.* Kinderman's umbrella policy provided coverage of $4,000,000 for each occurrence or in the aggregate, "in excess of the applicable underlying (or retained) limit hereinafter stated ..." *Id., quoting,* United Policy, Part I. United's policy was limited to $10,000.

Originally, Ambassador undertook Kinderman's defense in the lawsuit but later withdrew due to insolvency and subsequent liquidation. (Trial court opinion at 2.) Kinderman sought indemnification from United above the limit of $10,000, but United asserts a defense subject to a reservation of rights. *Id.*

Appellant raises two issues for our consideration:

1. Whether an excess liability insurance carrier has a duty to "drop-down" in order to provide coverage below the underlying limits in the event of the insolvency of the primary insurance carrier?

2. Whether the language in the United National Commercial Umbrella Liability Insurance Policy issued to J. Kinderman & Sons, Inc. is ambiguous, therefore, United National is required to "drop-down" in order to provide coverage below the underlying limits of liability as a result of the insolvency of the primary carrier?

(Appellant's brief at 3.) On July 2, 1990, the lower court entered summary judgment in favor of Kinderman and against United. This timely appeal followed.

Appellant United contends that its insurance policy does not provide that it will "drop-down" to afford any coverage below the underlying limits of the primary insurance coverage in the case of insolvency of the underlying insurer. United argues that the liability of Kinderman must exceed Ambassador's limit of $1,000,000, not $10,000, before United will be responsible for appellee's defense. The United policy provides that:

J. Underlying Insurance. If underlying insurance is exhausted by any occurrence, the Company [United] shall

be obligated to assume charge of the settlement or defense of any claim or proceeding against the insured resulting from the same occurrence but only where this policy applies immediately in excess of such underlying insurance, without the intervention of excess insurance of another insurer.

(United Policy, Provision J, R. 9a.)

The Pennsylvania Supreme Court enunciated principles in *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563 (1983), governing the interpretation of insurance contracts. In *Standard, supra,* the Pennsylvania Supreme Court stated the principles to be applied when interpreting insurance contracts:

The task of interpreting a contract is generally performed by a Court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where however, the language of the contract is clear and unambiguous, a Court is required to give effect to that language.

*Id.,* 503 Pa. at 304–305, 469 A.2d at 566 (citations omitted).

The trial court concluded that United contracted to provide coverage where there was no "underlying insurance" and United must provide coverage for charges above the retained limit of $10,000. In reaching its conclusion, the trial court relied on *Michael Luko and Independent Pier Company v. Lloyd's of London, et al.,* 393 Pa.Super. 165, 573 A.2d 1139 (1990), which held that the insolvency of a primary insurer did activate coverage and caused excess policy to "drop down" and provide some of what was the primary coverage. (Trial court opinion at 3.) In *Luko, supra,* this Court found that the insurance should drop down to provide coverage when the underlying insurance became insolvent since the umbrella insurance contracted to provide coverage at a limit if there was no underlying

insurance. The instant case is distinguishable from *Luko, supra,* in that the insurance contract in *Luko* specifically provided that a consortium would provide coverage where there was no underlying insurance. In the instant case, United did not provide coverage where there was no underlying insurance.

After a review of the insurance policy and briefs submitted by the parties, we find that the insurance contract between Kinderman and United is not ambiguous. United did not contract to provide coverage at the retained limit of $10,000 if there was no underlying insurance. The United policy provides:

> O. Maintenance of Underlying Insurance. It is warranted by the insured that the underlying policies listed in Schedule A, or renewals or replacements thereof not more restricted, shall be maintained in force during the currency of this policy, except for any reduction of the aggregate limits therein solely by payment of claims with respect to occurrences happening during the period of this policy. In the event of failure by the insured so to maintain such policies in force or to meet all conditions and warranties subsequent to loss under such policies, the insurance afforded by this policy shall apply in the same manner it would have applied had such policies been so maintained in force.

(United Policy, Provision O, R. 9a.) In Schedule A, Ambassador is listed as providing underlying insurance for products liability claims with coverage of $1,000,000. (R. 10a.) United's liability does not attach until the underlying insurance carrier has paid the amount of the underlying insurance, in this case $1,000,000. The intent of the parties is clear from the insurance contract; United did not intend to provide coverage until after the underlying insurance carrier's amount was fulfilled. The policy provides that in the case the insurance is not maintained, the insurance coverage would be the same as if the *insured maintained underlying insurance. United's coverage does not drop down simply because the underlying insurer has become*

*insolvent.* For the foregoing reasons, we reverse the lower court's decision. We hold that United's coverage for products liability claims is for such liability as exceeds $1,000,-000.

Order reversed. Jurisdiction relinquished.